## No. 28304

**Julia Morton Woodhouse v. The District Court in and for the Seventeenth Judicial District of the State of Colorado and the Honorable Abraham Bowling, one of the Judges thereof**

(587 P.2d 1199)

Decided December 18, 1978.

Grant, McHendrie, Haines and Crouse, P.C., Gary Holdeman, Susan B. Price, for petitioner.

Roath & Brega, P.C., David W. Stark, for respondents.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

This is an original proceeding pursuant to C.A.R. 21, in which petitioner seeks an order prohibiting the Adams County District Court from proceeding in excess of its jurisdiction. We issued a rule to show cause, which we now make absolute.

Petitioner and Richard Harold Heath were divorced in England on July 11, 1974. The divorce decree granted petitioner custody of the two children of the marriage. Mr. Heath was granted "reasonable access" to the children. He moved to the United States in 1974, and both parties have since remarried. The petitioner continues to live in England.

In July of 1977, Mr. Heath visited England. In August of that year, he abducted his son Thomas and brought him to the United States without the consent of the petitioner. Legal action taken by the petitioner in England, resulting in a May 8, 1978, court order directing Mr. Heath to return the child to the petitioner, has been ignored by him. In June, petitioner instituted a habeas corpus action in the Adams County District Court to regain custody of the child.

On June 12, 1978, Mr. Heath appeared with the child at the habeas corpus hearing and moved for a change of custody. The respondent granted the petition for the writ and at the same time assumed jurisdiction over the custody matter. The hearing on the motion for change of custody has been stayed pending our resolution of these proceedings.

The Uniform Child Custody Jurisdiction Act[1] specifically seeks to avoid the situation with which we are here confronted. Two of the declared "general purposes" of the Act are, (1) avoidance of conflict with courts of other states in child custody matters "which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being," and (2) deterrence of "abductions and other unilateral removals of children undertaken to obtain custody awards." Section 14-13-102(1)(a) and (e), C.R.S. 1973.

The respondent court assumed jurisdiction because it felt that the child and one parent have a "significant connection" with the state of Colorado. However, the respondent court disregarded sections 14-13-114 and 14-13-115, C.R.S. 1973, which require a court to recognize the valid

---

[1] Section 14-13-101, *et seq.*, C.R.S. 1973 (hereafter, the "Act").

custody decrees of other jurisdictions and not to modify such decrees unless the rendering state no longer has jurisdiction, or has declined to exercise jurisdiction. Since the Act has international application,[2] the threshhold question is whether the English court has retained jurisdiction "founded upon jurisdictional prerequisites substantially in accordance with this article." Section 14-13-115, C.R.S. 1973.

The respondent court asserts that the "fault" concept of divorce, which is expressed in the Matrimonial Causes Act of 1973, requires the English court to consider the conduct of the parties and the wishes of the "innocent" party in making the custody decision. However, in the present posture of these proceedings, we are not concerned with the reasons for the dissolution of the marriage of the parties, but with the current best interests of their child. We must assume that upon the return of this matter to the English court it will consider the best interests of the child before it makes a determination as to custody. We note that the Guardianship of Minors Act, 1971, C. 3, § 1, requires an English court deciding custody issues to give "first and paramount consideration" to the best interest of the child involved.

The words "first and paramount consideration," applied to determining the custody of a child,
"connote a process whereby, when all the relevant facts, relationships, claims and wishes of parents, risks, choices and other circumstances are taken into account and weighed, the course to be followed will be that which is most in the interests of the child's welfare . . . ." *In re L.* (1974), 1 W.L.R. 250, at 263, quoting Lord MacDermott in *J. v. C.* (1970).
This approach is subtantially the one taken by the courts of this state in determining the custody of children where various factors are taken into consideration in determining the best interest of the child. *See* section 14-10-124, C.R.S. 1973.

Contrary to respondents' contention, we do not interpret the English rule as requiring punishment for the parent who flouts the custody decree. As stated by Buckley, L. J., in *In re L., supra,* after a thorough discussion of "kidnapping" cases,
"[J]udges have more than once reprobated the acts of 'kidnappers' in cases of this kind. I do not in any way dissent from those strictures, but it would, in my judgment, be wrong to suppose that in making orders in relation to children in this jurisdiction the court is in any way concerned with penalizing any adult for his conduct. That conduct may well be a consideration to be taken into account, but . . . the cardinal rule applies that the welfare of the infant must always be the paramount consideration."

---

[2] Section 14-13-124, C.R.S. 1973.

This is no more strict than our provision that in a custody matter a court can decline to exercise jurisdiction because of the petitioner's conduct. Section 14-13-109, C.R.S. 1973. Thus, a determination of this case by an English court should lead to a result consistent with the purposes of the Act.

The English court which determined custody has continuing jurisdiction over the subject matter. Matrimonial Causes Act, 1973, C. 18, §42(6). As there are still "significant connections" with England and the English court has not declined jurisdiction, the Act demands that an English court determine whether there should be a modification of its custody decree. *Fry v. Ball,* 190 Colo. 128, 544 P.2d 402 (1975).

There is no evidence here of an emergency situation which would justify the district court in assuming jurisdiction pursuant to section 14-13-104(1)(c), C.R.S. 1973. Mr. Heath's self-serving statements that his child appeared unwell are not enough to confer jurisdiction on the respondent district court. *Young v. District Court,* 194 Colo. 140, 570 P.2d 249 (1977).

Nor do traditional *parens patriae* powers give the district court the authority to determine this custody matter. Habeas corpus cases decided before the Act was enacted do not provide sufficient basis for the court's acceptance of jurisdiction. The drafters of the Act clearly intended to limit the discretion of the respondent court in this type of situation.

The district court has already ordered social services reports both here and in England to determine the best interests of the child. Such reports may as readily be utilized by an English court as by respondent.

The rule is made absolute, and the trial court is directed to vacate its order of temporary custody and to grant the relief requested in the Petition for Writ of Habeas Corpus.

MR. JUSTICE ERICKSON does not participate.