## No. 28519

**Lori Roberts, formerly Lori Travers v. The District Court of Larimer County, Colorado and the Honorable William F. Dressel, a District Court Judge thereof**

(596 P.2d 65)

Decided June 18, 1979.

Glenn Meyers, James H. Hiatt, for petitioner.

Nancy A. Neuswanger, for respondents.

*En Banc.*

MR. JUSTICE ROVIRA delivered the opinion of the Court.

This is an original proceeding under C.A.R. 21, in which the petitioner (mother), by way of writ of prohibition, challenges the trial court's jurisdiction to hear a motion for change of custody. We issued a rule to

show cause and now make that rule absolute.

In January 1976, the Superior Court for Orange County, California, entered a final judgment dissolving the marriage of Lori Roberts, formerly Lori Travers (mothers), and Kim Travers (father). The court granted custody of the couple's child, Autumn Travers, to the mother and reasonable visitation rights to the father. In March 1977, the judgment was amended, by agreement, to provide that reasonable visitation would include having the child stay with the father for two months during the summer school vacation.

In January 1978, the mother and child moved from California to Oregon; the father had moved to Kansas. The father exercised his visitation rights in June, 1978. When the two-month visitation period ended, he refused to return the child to the mother in Oregon. In September 1978, the father, his second wife and the child moved to Colorado.

On October 4, 1978, the father filed, in the district Court of Larimer County, a Motion to Modify Custody Order. The mother was personally served with copies of the motion and summons in Larimer County on October 18, 1978. On October 28, 1978, the mother petitioned the district court for a writ of habeas corpus and filed a response to the Motion to Modify Custody Order.

The court scheduled a hearing to determine the issue of jurisdiction for November 15, 1978. The father appeared with his attorney; and, although the mother did not personally appear, she was represented by counsel at the hearing. As a result of the evidence presented at the hearing, the district court ruled on November 28, 1978, that an emergency situation existed concerning the immediate needs and welfare of the child, gave temporary custody to the father, denied the petitioner's petition for writ of habeas corpus, ordered an investigation by the Department of Social Services and that a hearing be set on the father's motion to modify the original custody order.

We note at the outset that the allegations of the father, based on his affidavit as well as his testimony at the hearing of November 15, 1978, and those of the mother, based on her affidavit and a letter from the child's first-grade teacher in Oregon, are directly contradictory. According to the father, the child arrived in Kansas severely malnourished and with dental and other hygienic problems. In addition, the child had missed forty days of school because of the mother's lethargy, and was thus retarded in her education. Also, the mother was unemployed, on welfare, using illegal drugs, and living with a man who sold illegal drugs.

According to the mother, all of the father's allegations were untrue. The child had been well cared for, had received two dental checkups in the past year, and had attended school regularly. Here statements concerning the child's academic record were supported by a letter written by the child's first-grade teacher.

The issue presented in this case is whether the district court should have exercised its jurisdiction to hear the motion for change of custody in light of the provisions of the Uniform Child Custody Jurisdiction Act (UCCJA), article 13 of tile 14, C.R.S. 1973.

■ The UCCJA requires the courts of a state that adopts the Act to recognize and enforce the custody decree of another state and to decline to modify that decree unless the other state no longer has jurisdiction. Because all parties in this case have left California, that state no longer has jurisdiction. Section 14-13-115(1), C.R.S. 1973. When the state which issued the original custody decree no longer has jurisdiction, the UCCJA confers jurisdiction on the child's "home state," as that term is defined in section 14-13-103(5), C.R.S. 1973, in this case, Oregon.

■ The UCCJA also sets forth limited circumstances under which other states could exercise jurisdiction in this matter. Section 14-13-104, C.R.S. 1973. The district court based its finding of jurisdiction here on the fact that there was an emergency which required the protection of the child from mistreatment or neglect under section 14-13-104(1)(c), C.R.S. 1973, which provides:

"14-13-104. Jurisdiction. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

. . . .

"(c) The child is physically present in this state and the child had been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent."

The district court's classification of this situation as an emergency was based on its finding that the child was "underweight, in need of dental care and attention for a child of her age." There was no evidence before the trial court of an emergency situation which would justify the assumption of jurisdiction pursuant to section 14-13-104(1)(c).

The court's factual finding was based entirely upon the father's unsubstantiated testimony. This court has stated on several occasions that a parent's self-serving statements that his child appeared unwell are not in and of themselves enough to confer jurisdiction on the courts of this state.[1] *Woodhouse v. District Court,* 196 Colo. 558, 587 P.2d 1199 (1978); *Young v. District Court,* 194 Colo. 140, 570 P.2d 249 (1977).

Although the allegations of both the father and the mother indicate that the best interests of the child mandate judicial review of the fitness of each parent to have custody of the child, that does not necessarily justify

---

[1] If a real emergency exists, then there should certainly be some evidence available to demonstrate the gravity of the situation; *e.g.,* medical reports, professional testimony, etc. At the very least, the parent should be able to provide a convincing reason why such evidence does not exist.

the exercise of jurisdiction by the courts of this state.

■ The UCCJA is to be construed to effectuate its purpose of permitting courts to act in the best interests of the child and at the same time to eliminate "jurisdictional fishing, with children as the bait." *Wheeler v. District Court,* 186 Colo. 218, 526 P.2d 658 (1974). We recognize that in cases of this nature there is often a fine balance between the best interests of the child and the selection of the proper forum in which to resolve the issues between antagonistic parents. However, the jurisdictional guidelines of the UCCJA may well coincide with the best interests of the child. Such is the instant case.

■ Three general purposes of the UCCJA govern the disposition of this case. First, we seek to avoid conflict with the courts of other states concerning custody determination. Section 14-13-102(1)(a), C.R.S. 1973. Second, we seek to deter the unilateral action of a parent in contravention of an existing child custody decree in order to obtain a different custody decree. Section 14-13-102(1)(e), C.R.S. 1973. Lastly, we seek to promote cooperation with the courts of other states in order to ensure that the determination of custody is made by the court which can best decide the case in the interest of the child. Section 14-13-102(1)(b), C.R.S. 1973.

These purposes of the UCCJA are not to be emasculated by a provincial or limited view of the spirit or purpose of the act. The courts of the home state of the child are equally well suited to remedy the ills which result from alleged parental abuse or neglect. More harm than good arises if the courts of this state allow parents to disregard the decrees of courts in our sister state, absent a grave emergency situation. Thus, the jurisdictional parameters of the UCCJA should be followed unless the best interests of the child, as shown by substantial evidence, clearly mandate contravention thereof.

■ Oregon is the home state of the child. Because an emergency situation was not adequately shown by the evidence, any modification of the custody decree should first be sought in the courts of that state.[2]

However, the unique circumstances of this case stay our hand in ordering the district court to return the child to Oregon immediately. The child has been with her father for one year; we do not want to compel her return to Oregon for the duration of a proceeding to redetermine custody, only to have her sent back to Colorado should the father obtain custody. In fashioning the remedy below, we seek to minimize the disruptive effect of these proceedings on the child. We therefore employ the remedy which

---

[2] In view of the fact that the child resided in Oregon for only six months and has not returned to that state for a year, the Oregon courts may decide that the matter should be heard in Colorado. We do not intimate in this opinion that we would reject jurisdiction over the matter under such circumstances. Should Oregon choose not to hear the matter, the courts of Colorado would be available to resolve the issue.

we utilized in *Fry v. Ball,* 190 Colo. 128, 544 P.2d 402 (1975).

The father should be permitted an opportunity to seek modification of the custody decree in the appropriate court in Oregon, the child's home state. Accordingly, if, within ten days from the date mandate issues from this court, the father files with the respondent, the District Court of Larimer County, Colorado, a written notice of his intention to petition the Oregon court for modification, he will be granted an additional twenty days within which to actually file his petition for modification with the Oregon court. During this period and until the Oregon courts have taken final action on the modification petition, the respondent court shall require that the child shall remain in the temporary custody of her father. However, if the father fails to file a written notice of his intent to seek modification of the custody decree in Oregon, or if he fails to file a petition for modification in Oregon, the respondent court shall dissolve the temporary award of custody to the father, and shall grant the mother's petition for habeas corpus and order the immediate return of the child to the mother.

Upon proper notification that the Oregon courts have taken final action on the modification petition, the respondent court shall recognize the resulting decree. As noted in *Fry, supra,* the courts of this state stand ready to assist the courts of Oregon, consistent with the letter and spirit of the UCCJA.

The rule is made absolute, subject to the foregoing conditions, and this cause is remanded for further proceedings in accord with this opinion.

MR. JUSTICE LEE and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE CARRIGAN dissenting:

The majority opinion holds: "There is no evidence here of an emergency situation which could justify the district court in assuming jurisdiction pursuant to section 14-13-104(1)(c)." That is the only provision of the Uniform Child Custody Jurisdiction Act under which the trial court purported to exercise jurisdiction. Having held that the trial court has no jurisdiction over the child's custody, we cannot — consistent with law and logic — order the trial court to enforce conditions or limitations affecting the child's custody.

While I share the majority's concern for the child's welfare, I am confident that the Oregon courts will be similarly motivated. Moreover, the mother, who has not violated the custody order of any court, should not be required to endure further delay or bear further expense as a result of the father's having violated the prior custody order.

I am authorized to state that MR. JUSTICE LEE joins in this dissent.