Karen Jean Lane BROCK, Petitioner,

v.

The DISTRICT COURT OF the COUNTY OF BOULDER IN the 20TH JUDICIAL DISTRICT, State of Colorado and the Honorable Horace B. Holmes, one of the Judges thereof, Respondents.

No. 80SA368.

Supreme Court of Colorado.

Oct. 27, 1980.

Rehearing Denied Dec. 22, 1980.

French & Stone, Gary S. Mallo, Joseph C. French, Boulder, for petitioner.

Taussig & Flowers, P. C., John G. Taussig, Jr., Boulder, for respondents.

QUINN, Justice.

In this original proceeding under C.A.R. 21, Karen Lane Brock (petitioner) seeks relief in the nature of prohibition against the respondent district court in connection with its exercise of child–custody jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA), section 14–13–101 *et seq.*, C.R.S. 1973. We issued a rule to show cause and now make the rule absolute.

The petitioner is the mother of an eight year old son born as issue of her marriage to John Lane (father). On May 27, 1976, the Superior Court of Floyd County, Georgia, entered a decree of divorce and awarded permanent custody of the minor child to petitioner with visitation rights to the father. After the divorce the petitioner remained with her minor child in Georgia and the father moved to Colorado. In June 1980 the child came to Boulder, Colorado, to visit his father for one month. At the conclusion of the visitation period the father refused to allow the child to return to his mother in Georgia and he filed with the respondent court a petition for an order awarding temporary and permanent custody to him.

The father invoked jurisdiction of the respondent court under section 14–13–104(1), C.R.S. 1973, claiming that an emergency existed with respect to the return of the child to Georgia. The petitioner traveled to Boulder and filed a motion to dismiss the father's petition on the grounds that Georgia still retained jurisdiction over this matter and the respondent court lacked jurisdiction under the UCCJA. Prior to the court's determination of the motion to dismiss the father submitted psychiatric and psychological reports that indicated the child was hyperactive and was experiencing a childhood adjustment disorder. The court denied the petitioner's motion to dismiss and awarded temporary custody to the father. It held (1) that Georgia no longer had jurisdiction over custody in this case, (2) Colorado did have jurisdiction under section 14–13–104(1), C.R.S. 1973, and (3) the father's showing of an emergency justified the court's award of temporary custody to him. Original proceedings followed in this court. We conclude that the respondent court's exercise of jurisdiction was invalid and prohibition is in order.

I.

Georgia, like Colorado, has enacted the provisions of the UCCJA. *Ga. Code Ann.* § 74–501 *et seq.* (1980 Supp.). The objectives of that act, as pertinent here, were recently summarized in *Roberts v. District Court*, 198 Colo. 79, 596 P.2d 65, 68 (1979):

"First, we seek to avoid conflict with the courts of other states concerning custody determination. Section 14–13–102(1)(a), C.R.S. 1973. Second, we seek to deter the unilateral action of a parent in contravention of an existing child custody de-

cree in order to obtain a different custody decree. Section 14–13–102(1)(e), C.R.S. 1973. Lastly, we seek to promote cooperation with the courts of other states in order to ensure that the determination of custody is made by the court which can best decide the case in the interest of the child. Section 14–13–102(1)(b), C.R.S. 1973."

■ Section 14–13–104(1)(c), C.R.S. 1973, does authorize Colorado courts to exercise jurisdiction over custody matters in emergency situations when the child is physically present in the state and is threatened with mistreatment, abuse, or is otherwise neglected or dependent. However, that section neither grants the courts of this state the right, nor imposes upon them the duty, to modify out–of–state custody decrees under any and all circumstances merely because of a claimed emergency and a threshold showing that some form of judicial intervention might be appropriate. In order to effectuate the general purposes of the UCCJA [1] and to deter "jurisdictional fishing with children as bait," [2] section 14–13–104(1), C.R.S. 1973, must be read in conjunction with other provisions of the act.

Section 14–13–114, C.R.S. 1973, requires Colorado courts to recognize and enforce a custody decree of another state when the rendering court "assumed jurisdiction under statutory provisions substantially in accordance with this article" or when that court entered the decree "under factual circumstances meeting the jurisdictional standards" of the UCCJA. Similarly, section 14–13–115(1), C.R.S. 1973, prohibits Colorado courts from modifying the custody decree of another state unless it appears that the rendering state "does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree . . . ." *See Woodhouse v. District Court*, 196 Colo. 558, 587 P.2d 1199 (1978).

■ Neither the petitioner nor the father questions the Georgia court's jurisdiction to enter the original custody decree nor the validity of that decree. The central inquiry in this proceeding, therefore, is whether Georgia presently has jurisdiction in this matter. If the Georgia courts have continuing jurisdiction over custody and have not declined to exercise that jurisdiction, then the respondent court is precluded by sections 14–13–114 and 115, C.R.S. 1973, from exercising jurisdiction in this case, at least in the absence of a grave emergency. *E. g., Lopez v. District Court*, Colo., 606 P.2d 853 (1980); *Roberts v. District Court, supra; Kraft v. District Court*, 197 Colo. 10, 593 P.2d 321 (1979); *Fry v. Ball*, 190 Colo. 128, 544 P.2d 402 (1975).

Georgia statutory law clearly vests their courts with jurisdiction to modify the custody decree in this case. Section 74–504(a), *Ga. Code Ann.* (1980 Supp.), which corresponds in all respects to section 14–13–104(1), C.R.S. 1973, provides that:

"(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) This State (A) is the home State of the child at the time of commencement of the proceeding, or (B) had been the child's home State within six months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

"(2) It is in the best interest of the child that a court of this State assume jurisdiction because (A) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (B) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

---

1. Section 14–13–102, C.R.S. 1973.

2. *Wheeler v. District Court*, 186 Colo. 218, 220, 526 P.2d 658, 660 (1974).

"(3) The child is physically present in this State and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;

\* \* \* \* \* \*

"(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."[3]

Because Georgia courts have jurisdiction at this time to hear and determine any request for modification of the initial Georgia custody decree, the respondent court clearly exceeded its jurisdiction under the UCCJA in assuming plenary subject–matter jurisdiction over the issue of custody.

## II.

The respondent court asserts that even if Georgia has jurisdiction to modify the custody decree, a Colorado court should be able to exercise jurisdiction under the circumstances of this case under the doctrine of *parens patriae*. We do not agree.

In *Wilson v. Wilson*, 172 Colo. 566, 474 P.2d 789 (1970), we noted that where an emergency exists affecting the immediate needs and welfare of the child, a Colorado court may enter appropriate orders for the protection of the child even if its orders contravene those of a sister state that still retains jurisdiction over custody. An

"emergency", however, is not a talisman which, by its mere inclusion in a modification–petition, removes those salutary impediments to jurisdictional competition and conflict established by the UCCJA. The exercise of *parens patriae* jurisdiction should be limited to those cases where there is substantial evidence of a grave emergency affecting the immediate welfare of the child. *Roberts v. District Court, supra*; *Woodhouse v. District court, supra*; *In re Custody of Thomas*, 36 Colo.App. 96, 537 P.2d 1095 (1975); *see Comment, Temporary Custody Under the Uniform Child Custody Jurisdiction Act: Influence Without Modification*, 48 *U.Colo.L.Rev.* 603 (1977). Generally, judicial relief in such cases should not extend beyond the issuance of temporary protective orders pending the application to the court of the rendering state for appropriate modification of the custody decree. Only when there are compelling reasons, articulated in the record, that render such out–of–state application impractical, should a Colorado court grant anything but temporary relief under its *parens patriae* jurisdiction. We implied as much in *Roberts v. District Court, supra*:

"These purposes of the UCCJA are not to be emasculated by a provincial or limited view of the spirit or purpose of the act. The courts of the home state of the child are equally well suited to remedy the ills which result from alleged parental abuse or neglect. More harm than good

---

**3.** The respondent's argument that Georgia courts do not have jurisdiction to modify the initial custody decree centers on section 24–304b(a) of the Georgia Child Custody Intrastate Jurisdiction Act of 1978, *Ga. Code Ann.* § 24–301b *et seq.* (1980 Supp.), and *Banister v. Banister*, 240 Ga. 513, 241 S.E.2d 247 (1978). However, the Georgia Child Custody Intrastate Jurisdiction Act addresses jurisdictional competition and conflict by courts *within the state* in matters of custody. *Ga. Code Ann.* § 24–302b(1) (1980 Supp.). The Act seeks to avoid the shifting of children from county to county within the state by requiring that a complaint for change of custody be filed as a separate action in the county of residence of the legal custodian. *Ga. Code Ann.* § 24–304b(a) (1980 Supp.). Obviously, the Intrastate Act is not applicable to this case, where the child has been removed from Georgia to Colorado and a

Colorado court is attempting to modify the Georgia custody decree. The Uniform Child Custody Jurisdiction Act controls the *interstate* dimensions of this controversy. *Ga. Code Ann.* § 74–501 *et seq.* (1980 Supp.). Nor does *Banister v. Banister, supra*, provide contrary authority. That case was decided prior to Georgia's enactment of the UCCJA and stands only for the proposition that Georgia courts will not exercise jurisdiction in the absence of allegations justifying a modification. Where a petition for a change in custody sufficiently alleges changed circumstances justifying a modification of custody Georgia courts will assume jurisdiction. *E. g., Hilliard v. Atkinson*, 230 Ga. 872, 199 S.E.2d 789 (1973); *Bennett v. Clemens*, 230 Ga. 317, 196 S.E.2d 842 (1973); *Fortson v. Fortson*, 152 Ga.App. 326, 262 S.E.2d 599 (1979); *see Ga. Code Ann.* § 74–107(b), (c) (1980 Supp.) and § 74–504 (1980 Supp.).

arises if the courts of this state allow parents to disregard the decrees of courts in our sister states, absent a grave emergency situation. Thus, the jurisdictional parameters of the UCCJA should be followed unless the best interests of the child, as shown by substantial evidence, clearly mandate contravention thereof." 198 Colo. at ——, 596 P.2d at 68.

■ The circumstances of this case do not involve the type of compelling emergency that justifies the extraordinary relief granted by the respondent court. The father's claim of emergency is based on a condition of hyperactivity and a childhood adjustment disorder, neither of which is particularly unusual for an eight year old whose life has been disrupted by a broken home and parental discord. There is no evidence of physical abuse or imminent physical or emotional danger to the child upon his return to Georgia. Where, as here, no compelling reason exists for the exercise of *parens patriae* jurisdiction, and the child has been retained in this state by the non–custodial parent after the term of visitation has expired, the respondent court has no basis in fact or law to grant the non–custodial parent temporary custody of the minor child. *See* section 14–13–109(2), C.R.S. 1973.

The rule to show cause is made absolute and the cause is remanded to the district court with directions to order the immediate return of the child to the custody of the petitioner and to dismiss the father's petition for a modification of custody.