654 P.2d 827 (1982)
Ronnie Edward JOHNSON, Sr., Petitioner,
v.
The DISTRICT COURT In and For the COUNTY OF JEFFERSON, First Judicial District, and the Honorable Edward C. Day, Sitting for the Honorable Joseph P. Lewis, One of the Judges Thereof, Respondents.
No. 82SA381.
Supreme Court of Colorado, En Banc.
November 29, 1982.
Sandra J. Pfaff, Jacqueline St. Joan, Denver, for petitioner.
Kelly, Haglund, Garnsey & Kahn, Terre Lee Rushton, Denver, for respondents.
ROVIRA, Justice.
In this original proceeding under C.A.R. 21, petitioner Ronnie Edward Johnson, Sr., seeks relief in the nature of prohibition and/or mandamus to the respondent district court in connection with its refusal to find that it had jurisdiction over a child-custody matter. We issued a rule to show cause and now make the rule absolute.
Petitioner, who lives in Colorado, is the father of a five-year-old boy. Judy Schrodt Carpenter, the mother, lives in Tennessee. The natural parents have never been married to one another. The mother had actual physical custody of the child from the time the parents separated (about one year after the birth of the child) until approximately April 1, 1982, when the father arrived in Tennessee and requested visitation with the child. The mother agreed to allow the child to visit the father in Tennessee and further agreed that after a period of initiation and reintroduction the child could go with the father to Colorado to stay for approximately eight weeks. After about one month in Tennessee, the father removed the child to Colorado. He then refused to return the child and filed a petition in Jefferson County District Court seeking legal custody of the child pursuant to the Uniform Child Custody Jurisdiction Act, section 14-13-101 et seq., C.R.S.1973 (Act). Prior to that petition, there had never been any legal proceedings anywhere concerning the legal custody of the child.
The father invoked section 14-13-104(1)(c) of the Act to support jurisdiction of the court. That section grants jurisdiction *828 to Colorado courts to make a child-custody determination to protect the child where an emergency exists.[1] To support his contention that an emergency existed, the father alleged in his petition that the child had been subjected to physical abuse, the child was not clothed and cared for properly by the mother, and the mother and others frequently engaged in the use and sale of drugs in the presence of the child. On July 16, 1982, the district court of Jefferson County entered an order assuming jurisdiction over the matter, ordering that the child not be removed from the state until further hearing, and setting a later custody hearing. The mother, appearing by counsel, contested jurisdiction, and a hearing limited to the jurisdiction issue was held on August 20.
The district court held that the father's allegations in the petition were insufficient to confer jurisdiction on the court. Moreover, it held that because substantiation of the allegations was not offered in petitioner's initial request to the court, further testimony could not be taken, as the taking of testimony would itself be an exercise of jurisdiction.[2] The court then ordered the father to return the child to Tennessee.
Petitioner advances two arguments in this proceeding: first, the district court should have held an evidentiary hearing to determine whether an emergency existed sufficient to confer jurisdiction on the court; second, if the district court had no jurisdiction to hear evidence in this matter, then it had no jurisdiction to order the return of the child to Tennessee.
In concluding that it could hear no testimony, the trial court stated that a determination of jurisdiction could be predicated only upon the bare affidavit accompanying the initial petition, and not upon additional testimony to bolster the petitioner's position. The court reached this conclusion based upon its reading of our opinion in Roberts v. District Court, 198 Colo. 79, 596 P.2d 65 (1979). We believe the district court's interpretation erroneous.
In Roberts, supra, we held that the district court improperly exercised its jurisdiction under section 14-13-104(1)(c), C.R.S. 1973, when its finding of an emergency was based entirely on the father's unsubstantiated *829 testimony that the child had dental and other hygienic problems, was malnourished, and was retarded in her education. We reiterated our position that "a parent's self-serving statements that his child appeared unwell are not in and of themselves enough to confer jurisdiction on the courts of this state." 198 Colo. at 82, 596 P.2d at 68. See also Woodhouse v. District Court, 196 Colo. 558, 587 P.2d 1199 (1978); Young v. District Court, 194 Colo. 140, 570 P.2d 249 (1977). We stated that "[i]f a real emergency exists, then there should certainly be some evidence available to demonstrate the gravity of the situation; e.g., medical reports, professional testimony, etc." 198 Colo. at 82 n. 1, 596 P.2d at 68 (emphasis added). We did not limit the inquiry to the four corners of the affidavit but, rather, expressed our disapproval of reliance on unsubstantiated statements. Although the finding of an emergency is the legal predicate to a determination that jurisdiction exists to make a child custody determination, the court has jurisdiction to hear testimony on the emergency issue, just as it has jurisdiction to consider the affidavit. As we have said before, "[e]very court has judicial power to hear and decide the question of its own jurisdiction." Davidson Chevrolet, Inc. v. City and County of Denver, 138 Colo. 171, 174, 330 P.2d 1116, 1118 (1958). See also Guthrie v. Barda, 188 Colo. 124, 533 P.2d 487 (1975); Isham v. Miller, 80 Colo. 380, 252 P. 353 (1927).
It may be, as the district court found, that the fact that the events alleged in the father's petition occurred in the State of Tennessee is relevant to the question of whether there was an emergency. We doubt, however, that it is determinative. Sufficient evidence might be presented at the hearing for the court to conclude that return of the child to Tennessee may result in imminent harm. In such a case, a finding of an emergency may be warranted even though the events upon which the finding is based occurred elsewhere.
It may also be true, as found by the district court, that the significant connections of the child and his mother are with Tennessee and the substantial evidence concerning the care of the child is with that state. Those facts, however, are not sufficient to justify a conclusion that jurisdiction does not exist. The "significant connection" and "substantial evidence" ground for jurisdiction of section 14-13-104(1)(b) is different from the "emergency" ground of section 14-13-104(1)(c), and a finding of either is sufficient to bestow jurisdiction. See Holt v. District Court, 626 P.2d 1336 (Okl.1981).
It is important to note that the question of whether jurisdiction exists is distinct from the question of whether it should be exercised. Although there are overlapping considerations involved in addressing the two questions, the first may be answered with less information than the second. See Smith v. Smith, 40 Or.App. 257, 594 P.2d 1292 (1979). Even if a determination that jurisdiction exists is made, the court may decline to exercise jurisdiction, or it may stay the proceedings upon the condition that custody proceedings be initiated in another state. See section 14-13-108, C.R.S. 1973.
We therefore remand the cause to the district court for a hearing to determine whether an emergency exists that would support jurisdiction. If the district court finds that jurisdiction does not exist, it would be appropriate for it to identify the source of its authority to order the return of the child to Tennessee, considering the general rule that if a court lacks jurisdiction the only order it can enter is one of dismissal. See McLeod v. Provident Mutual, 186 Colo. 234, 526 P.2d 1318 (1974); Sams Automatic Car Coupler Co. v. League, 25 Colo. 129, 54 P. 642 (1898). See also Brouwer v. District Court, 169 Colo. 303, 455 P.2d 207 (1969) ("A Colorado court, under a motion for change of custody, obviously does not have jurisdiction to order the child to another state."); Giles v. State, 123 Ga.App. 700, 182 S.E.2d 140 (1971) (after trial court ruled it had no jurisdiction to determine custody, it was error for it to order children remanded to father, as any further order was a mere nullity).
Accordingly, we make the rule absolute.
NOTES
[1] Section 14-13-104 reads in its entirety:

"Jurisdiction. (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c) of this subsection (1), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.
(2) Except under paragraphs (c) and (d) of subsection (1) of this section, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."
[2] Petitioner sought to present the testimony of two psychologists on the emergency issue. An affidavit of one of the psychologists submitted with the petition to this court stated that the two psychologists had examined the child and concluded that if the child were returned to Tennessee, "there would be a substantial risk that the child would be subjected to further abuse, neglect and possible disappearance at the hands of the child's mother, and that such actions have been directed toward the child by his mother in the past."