E.P., Petitioner,

v.

DISTRICT COURT OF GARFIELD COUNTY, Colorado, and Honorable Gavin D. Litwiller, a Judge assigned to said Court, Respondents.

The PEOPLE of the State of Colorado, Petitioner,

v.

The DISTRICT COURT In and For the 9TH JUDICIAL DISTRICT, COUNTY OF GARFIELD, State of Colorado; The Honorable Gavin D. Litwiller, a Judge thereof, Respondents.

Nos. 84SA241, 84SA213.

Supreme Court of Colorado, En Banc.

Feb. 4, 1985.

Rehearing Denied March 11, 1985.

Robert B. Emerson, Carbondale, for petitioner in No. 84SA241.

Earl Rhodes, Garfield Co. Atty., Glenwood Springs, Duane Woodard, Atty. Gen., Cheryl J. Hanson, Asst. Atty. Gen., for respondents in No. 84SA241.

Earl G. Rhodes, Garfield Co. Atty., Glenwood Springs, for petitioner in No. 84SA213.

Duane Woodard, Atty. Gen., Cheryl J. Hanson, Asst. Atty. Gen., Denver, for respondents in No. 84SA213.

Petre & Zimmerman, P.C., Daniel B. Petre, Glenwood Springs, Guardian ad litem for Minor Children.

QUINN, Justice.

These consolidated proceedings are brought pursuant to C.A.R. 21 and arise out of the same dependency proceeding presently pending in the juvenile division of the District Court of Garfield County. Both cases raise issues concerning the nature and scope of the court's authority under the Colorado Children's Code to enter a dependency adjudication with respect to nonresident children who are only temporarily present in the state of Colorado. In *E.P. v. District Court of Garfield County* (No. 84SA241), we granted the petition of E.P., the mother of three minor children and their legal custodian under a Wyoming decree of divorce, for a rule to show cause why the juvenile division of the district court, after having entered an order authorizing the Garfield County De-partment of Social Services to place the children in a shelter facility, should not be prohibited from conducting an adjudicatory hearing on dependency or neglect when, as here, the children normally reside with their mother in the state of Wyoming and were only present in Colorado for a short duration in the temporary care of their father, L.P., when the shelter order was entered. In *People v. District Court in and for the Ninth Judicial District* (No. 84SA213), we simultaneously granted the People's request for a rule directing the juvenile court to show cause why it should not be required to adjudicate the children dependent or neglected on the basis of the admissions by L.P., the children's father, to the People's dependency petition. We now make the rule absolute in *E.P. v. District Court of Garfield County* and discharge the rule in *People v. District Court in and for the Ninth Judicial District.*

I.

E.P., who is the mother of the three children and the petitioner in 84SA241, married L.P. in Evanston, Wyoming, on April 2, 1976. Prior to her marriage E.P. had been a lifelong resident of the state of Wyoming. Three female children were born of the marriage: M.P., seven years old, and R.P. and D.P., both five years of age. E.P. and L.P. were divorced in the District Court of Sweetwater County, Wyoming, on March 2, 1982. The Wyoming divorce decree granted custody of the three children to E.P., with visitation rights in L.P. After the divorce, E.P. and the children continued to reside in the state of Wyoming and L.P. moved to Glenwood Springs, Colorado, where he subsequently married C.P.

In July 1983 E.P. was required to undergo surgery and arranged for L.P. to pick up the three children and to keep them at his home in Glenwood Springs for a temporary visit while E.P. recuperated. Shortly after L.P. brought the children to Glenwood Springs, he contacted the Garfield County Department of Social Services because he believed D.P., one of the five year

old girls, was exhibiting behavior indicative of prior sexual abuse. At about the same time the Department of Social Services received reports from a third party that the three children were being mistreated while in L.P.'s custody. After the Department conducted an investigation of the alleged child abuse,[1] the juvenile division of the district court authorized temporary shelter care for the children, and pursuant to section 19–2–103, 8 C.R.S. (1978 & 1984 Supp.), set the matter for a shelter hearing on August 4, 1983. L.P. and C.P. attended the hearing, but E.P. had not been notified and consequently was not present. As a result of the hearing, the court granted temporary custody of the children to the Department and authorized the placement of the children in a shelter care facility and the filing of a dependency petition.[2]

On August 30, 1983, the People filed a petition requesting the court to adjudicate the children dependent or neglected on the following grounds: that the children lacked proper parental care due to the acts or omissions of L.P., their father, in allowing C.P., his wife, to subject the children to psychological abuse; that C.P. had subjected the children to mistreatment or abuse; and that the children's natural mother, E.P., while residing with the children in the state of Wyoming, had allowed another to subject them to mistreatment or abuse. The petition stated that termination of the parent-child relationship was a possible remedy in the event of a dependency adjudication and requested the court to enter such orders concerning the care, custody, support, and parental relationship of the children as were necessary in the children's interests.

E.P. was served by mail with the petition and, through appointed counsel, denied the allegations on November 22, 1983.[3] L.P., in contrast, admitted that the children had been exposed to an injurious home environment while in his custody due to C.P.'s unstable emotional condition and excessive use of alcohol, and also acknowledged that he had reason to believe the three children had been abused while in the custody of E.P. in Wyoming. The court set the case for trial to a jury on March 12, 1984.

Prior to the trial date E.P. moved to dismiss the petition on jurisdictional grounds. Although conceding that the court had the authority to provide shelter care for the children in the emergency arising out of their temporary stay with L.P., it was E.P.'s contention that, because she and the children were permanent residents of the state of Wyoming, neither the alleged acts of mistreatment or abuse by L.P. and C.P. in Colorado nor the alleged acts of abuse by E.P. in Wyoming provided a Colorado court with a sufficient interest in the children and the family relationship to constitutionally permit it to exercise jurisdiction over the custody status of the children. The People, also prior to trial, requested an adjudication of dependency or neglect based on L.P.'s admission that the children had been subjected to mistreatment or abuse while in his temporary custody in Colorado and his assertion that the children had been abused while in the custody of E.P. in Wyoming.

On March 16, 1984, the court denied E.P.'s motion to dismiss, ruling that the physical presence of the children in Colorado constituted a sufficient jurisdictional basis for it to proceed with the trial of the dependency petition.[4] The court, however,

---

1. Section 19–10–109, 8 C.R.S. (1978 & 1984 Supp.), requires the county department of social services to thoroughly investigate any report of known or suspected child abuse or neglect.

2. *See* §§ 19–3–101(2) and 19–10–113(1), 8 C.R.S. (1978).

3. After the children had been placed in a shelter care facility, E.P. spent the months of November and December 1983 in Glenwood Springs, Colorado, to participate in the juvenile court proceedings and to be closer to her children. She was unable to find work in Glenwood Springs, however, and returned to her home in Green River, Wyoming, where she and the children previously resided and where she continues to live.

4. Although the court in its ruling stated that "the local Wyoming Department of Social Services was contacted and it declined to act," there is nothing whatever in the record before us to

ruled that evidence of E.P.'s alleged acts or omissions in the state of Wyoming would not be admissible to support the People's dependency claim based on alleged conduct occurring in the state of Colorado, but would only be admissible at a subsequent dispositional hearing in the event the children were adjudicated dependent or neglected. Finally, the court denied the People's request for a dependency adjudication based on L.P.'s admission to acts or omissions occurring in the state of Colorado because, in the court's view, the admission of one parent to the dependency status of the children cannot work to deprive the nonadmitting parent of a right to a trial on the dependency issue.

Both E.P. and the People thereafter filed original proceedings in this court. E.P. basically asserts that the juvenile court's jurisdiction in this case was limited to providing emergency care for the children, and since the emergency was abated when the children were removed from L.P.'s home, the court must first refer the case back to Wyoming authorities before proceeding to a trial on the People's dependency petition. The People, in contrast, argue that the juvenile court does have jurisdiction to enter a dependency adjudication in this case and further contend that the court exceeded its jurisdiction when it refused to adjudicate the children dependent or neglected based solely on L.P.'s admission to the dependency petition. The respondent court contends that, notwithstanding the significant interest that Wyoming has in the children and family relationship, a Colorado court is vested with jurisdiction under the doctrine of *parens patriae* to enter a dependency adjudication based on the physical presence of the children in this state, although such adjudication may not be based on the unilateral admission of one parent only, when the other parent has denied the allegations of dependency or neglect. We conclude that the juvenile court, after the entry of temporary protective orders for the children, was required to stay further proceedings on the dependency petition and to refer the case to the Wyoming court that entered the original custody decree in order to provide that state with an opportunity to assume jurisdiction over the matter of custody. In view of this disposition, it is unnecessary for us to resolve whether the juvenile court can appropriately enter a dependency adjudication based solely on the admission of L.P. to the dependency petition.

## II.

E.P.'s initial challenge is cast in terms of due process of law. She basically claims that, because she and the children are permanent residents and domiciliaries of the state of Wyoming, a Colorado juvenile court lacks sufficient interest in the children to adjudicate the children's status in a dependency proceeding. We reject her argument.

 The state as *parens patriae* has a continuing responsibility to provide for the protection of children within its borders regardless of considerations of domicile. Section 19–1–104(1)(c) of the Colorado Children's Code recognizes this responsibility by vesting the juvenile court with jurisdiction in proceedings "[c]oncerning any child who is dependent or neglected."[5] The pur-

---

support this statement. Moreover, there is no indication that the Wyoming court that entered the original custody decree was ever informed of the dependency proceeding pending in the Colorado court or ever declined to assume jurisdiction over the issue of custody.

5. A dependent or neglected child is defined in section 19–1–103(20), 8 C.R.S. (1978 & 1984 Supp.), to include: a child whose parent has subjected him to mistreatment or abuse or whose parent has suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse

and prevent it from recurring; a child who lacks proper parental care through the actions or omissions of the parent; a child whose environment is injurious to his welfare; a child whose parent has failed or refused to provide necessary care for the health, guidance, or well-being of the child; and a child who is homeless, without proper care, or not domiciled with the parent, through no fault of the parent. A dependency proceeding must be commenced in the county where the child resides, or is present, or where the alleged violation of law occurred. § 19–1–105(1)(a), 8 C.R.S. (1984 Supp.).

pose of the dependency proceeding is to determine the status of the child as dependent or neglected and to permit the court, in the event of an adjudication, to render a decision which safeguards and promotes the welfare of the child and, to the extent practicable, to assist a parent in providing the necessary care and guidance for the child in a stable home environment. *People in the Interest of A.M.D.*, 648 P.2d 625, 639–40 (Colo.1982). In view of the state's strong interest in providing for the welfare of children within its borders, the presence of an allegedly dependent or neglected child within the state is considered to be a sufficient jurisdictional basis to permit a court to adjudicate the dependency status of the child in that state. *Dixon v. Whittemore*, 242 A.2d 61 (N.H.1968); *In Interest of Gonzales*, 25 Ill.App.3d 136, 323 N.E.2d 42 (1975); *In re Mary S. v. Bill S.*, 70 Misc.2d 406, 333 N.Y.S.2d 649 (1972); *see also* Bodenheimer and Neeley-Kvarme, *Jurisdiction Over Child Custody and Adoption After Schafer and Kulko*, 12 U.C.D.L.Rev. 229, 239–41, 247–48 (1979); *Developments in the Law—State Court*

*Jurisdiction*, 73 Harv.L.Rev. 909, 978 (1960); Traynor, *Is This Conflict Really Necessary?*, 37 Tex.L.Rev. 657, 661–62 (1959). Domicile, in other words, is not a prerequisite to juvenile court jurisdiction in a dependency proceeding. *People in the Interest of E.F.C.*, 30 Colo.App. 190, 490 P.2d 706 (1971).[6]

Although presence of the child in the forum state will generally provide an adequate basis for the exercise of dependency jurisdiction, we recognize that there may be circumstances where the presence of nondomiciliary children in Colorado might be so transitory and their relationship to the state so tenuous that a juvenile court's exercise of dependency jurisdiction might raise a significant due process issue.[7] We are not dealing with such circumstances here, however, since there are other factors besides the children's presence within the state that adequately satisfy due process criteria. The dependency petition alleged that some of the acts or omissions causing the children's dependency took place in the state of Colorado while the children were in the temporary custody of

6. E.P. also claims that the juvenile court's exercise of jurisdiction under the Colorado Children's Code violates equal protection of the laws because the Code makes no distinction between dependency proceedings involving children who are long-term residents of Colorado and children who are only temporarily present in the state. Such a distinction, according to E.P., is necessary if Colorado is to effectuate its *parens patriae* interest in children who are only temporarily in the state. We find E.P.'s argument devoid of merit. As noted in our discussion of E.P.'s due process claim, the state of Colorado, as *parens patriae*, has a responsibility for dependent or neglected children within its borders regardless of the temporary or permanent nature of their residence and also regardless of their domicile. Dependent or neglected children, in other words, are similarly situated in relation to the state's responsibility to intervene on their behalf. Hence, no equal protection claim is implicated by the failure of the Colorado Children's Code to distinguish between dependency proceedings based on the length of residence of the children in the state.

7. If, for example, a juvenile court entered a dependency adjudication solely on the basis of the admitted acts or omissions of the noncustodial parent while the children were in his temporary custody in the state of Colorado, or solely on the basis of the acts or omissions of the nondomiciliary parent in another state while the children were permanently residing with her in that state, and if the court thereafter set the matter for hearing on the termination of parental rights or other long-term change of custody, the nondomiciliary custodial parent might be in a position to successfully challenge on due process grounds the court's exercise of jurisdiction at the dispositional phase of the proceeding. We are not confronted with such a challenge here, however, as the case before us concerns only the juvenile court's exercise of jurisdiction at the adjudicatory phase of the proceeding. The constitutional interest of a custodial parent in the family relationship is significantly different at the adjudicatory phase of a dependency proceeding than it is at the dispositional phase, which more directly implicates the parent's legal interest in the continuation of the parental relationship. *See People in the Interest of A.M.D.*, 648 P.2d 625, 640–41 (Colo.1982). As we noted in *People in the Interest of O.E.P.*, 654 P.2d 312, 316 (Colo.1982), "the adjudicatory phase of a dependency proceeding does not affect the natural parent's liberty interest in the parent-child relationship to the same constitutionally significant degree as does a termination proceeding."

their father, a Colorado resident and apparently a Colorado domiciliary. In addition, the People made a showing that the children were in need of temporary emergency care requiring immediate judicial intervention. Finally, adequate notice was given to E.P., the custodial mother, and counsel has been appointed to protect her interest in the dependency proceedings.

To hold that the juvenile court could exercise its dependency jurisdiction in this case without violating due process of law, however, is not to say that the exercise of that jurisdiction necessarily comports with jurisdictional restrictions imposed by statutory law. It is to that question that we now turn.

### III.

■ The Colorado Children's Code and the Uniform Child Custody Jurisdiction Act (UCCJA) address the proper exercise of a juvenile court's jurisdiction in cases which may result in a change of custody. Although the two statutory schemes have separate goals and discrete jurisdictional provisions, we nevertheless must construe these jurisdictional provisions *in pari materia* in order to determine the propriety of the juvenile court's exercise of jurisdiction in this case.

The express purposes of the Children's Code, as stated in section 19-1-102(1), 8 C.R.S. (1978 & 1984 Supp.), are as follows:

(a) To secure for each child subject to these provisions such care and guidance, preferably in his own home, as will best serve his welfare and the interests of society;

(b) To preserve and strengthen family ties whenever possible, including improvement of home environment;

(c) To remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child; and

(d) To secure for any child removed from the custody of his parents the necessary care, guidance, and discipline to assist him in becoming a responsible and productive member of society.

To effectuate these purposes, the Children's Code grants the juvenile court subject matter jurisdiction over children who are alleged to be dependent or neglected, establishes detailed procedures relating to the adjudicatory and dispositional phases of a dependency proceeding, and grants the court an array of remedies calculated to protect children who are endangered in their surroundings. These remedies include the authority to appoint a guardian of the person or legal custodian of a child who comes within the court's jurisdiction, § 19-1-104(1)(d), 8 C.R.S. (1978), the authority to provide temporary shelter care for endangered children whose welfare requires their placement in a shelter facility, § 19-2-103, 8 C.R.S. (1978 & 1984 Supp.), the authority to change the legal custody of a child upon an adjudication of dependency, § 19-3-111(1)(b) and (c), 8 C.R.S. (1978 & 1984 Supp.), and the authority to terminate the parent-child relationship when the circumstances compel this drastic remedy, §§ 19-11-101 to-110, 8 C.R.S. (1978 & 1984 Supp.).

■ The primary objectives of the UCCJA, in contrast, are to avoid conflicts with courts of other states in the matter of child custody, to deter unilateral acts of a parent in an effort to obtain a different custody decree in contravention of an existing custody decree, and to promote cooperation with the courts of other states in ensuring that the determination of custody is made by the court with which the child and his family have the closest connection and where significant evidence concerning the child is most readily available. § 14-13-102(1), 6 C.R.S. (1973); *Brock v. District Court,* 620 P.2d 11 (Colo.1980); *Roberts v. District Court,* 198 Colo. 79, 596 P.2d 65 (1979). Although the UCCJA deals primarily with custody struggles between parents, its provisions encompass child dependency proceedings. Section 14-13-103(3), 6 C.R.S. (1973), defines the term

"custody proceeding" as any proceeding "in which a custody determination is one of several issues, such as an action for divorce, dissolution of marriage, or separation, *and includes child neglect and dependency proceedings."* [8] (Emphasis added). Section 14–13–104, 6 C.R.S. (1973), which contains the jurisdictional grant pertinent to this case, states:

> (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> * * * * * *
>
> (c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent.[9]

We have previously held that this jurisdictional grant must be read in conjunction with other provisions of the UCCJA in order to further the goals of the statute. *E.g., Brock,* 620 P.2d 11; *Lopez v. District Court,* 199 Colo. 207, 606 P.2d 853 (1980); *Roberts,* 198 Colo. 79, 596 P.2d 65; *Kraft v. District Court,* 197 Colo. 10, 593 P.2d 321 (1979); *Woodhouse v. District Court,* 196 Colo. 558, 587 P.2d 1199 (1978). One of these other provisions is section 14–13–115(1), 6 C.R.S. (1973) which states:

> If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this article or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.

The state of Wyoming has also enacted the UCCJA. Wyo.Stat.Ann. §§ 20–5–101 to –125 (1977). Section 20–5–104(a)(ii) states that a Wyoming court competent to decide child custody matters has jurisdiction to modify a child custody decree if:

> It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one (1) contestant, have a significant connection with the state and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships.

Physical presence of the child in Wyoming, while desirable, is not a statutory prerequisite for a Wyoming court's jurisdiction to determine the matter of custody. Wyo. Stat.Ann. § 20–5–104(c) (1977).

---

**8.** The term "custody determination," as used in the UCCJA, means "a court decision and court orders and instructions providing for the custody of a child." § 14–13–103(2), 6 C.R.S. (1973). A "custody decree," as used in the UCCJA, means "a custody determination contained in a judicial decree or order made in a custody proceeding and includes an initial decree and a modification decree." § 14–13–103(4), 6 C.R.S. (1973). Where, as here, there is a prior custody decree, any custody determination made in the course of a dependency proceeding would necessarily be a modification decree.

**9.** The other bases of jurisdiction to make a child custody determination, as set forth in section 14–13–104(1), 6 C.R.S. (1973), are:

> (a) This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding, and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
>
> (b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one contestant, have a significant connection with this state and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
>
> * * * * * *
>
> (d) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraph (a), (b), or (c) of this subsection (1), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

It is within this statutory framework that we must evaluate E.P.'s challenges to the juvenile court's exercise of jurisdiction. Her first challenge relates to the juvenile court's grant of temporary custody to the department of social services for placement of the children in a shelter care facility. Her second challenge is directed to the juvenile court's continuing exercise of jurisdiction in the dependency proceeding presently pending before it.

## A.

E.P. contends that the juvenile court exceeded its jurisdiction when, rather than transferring the children to Wyoming for further custody proceedings, it transferred the temporary custody of the children to the Department of Social Services for placement in a shelter care facility. We conclude that the court did not exceed its jurisdiction by ordering the placement of the children in a shelter care facility.

■■■■ The Children's Code clearly authorizes a juvenile court to provide emergency shelter care for children endangered by their surroundings and to continue such shelter care when it is necessary to safeguard the welfare of the children. § 19–2–103, 8 C.R.S. (1978 & 1984 Supp.); *S.L. v. District Court,* 676 P.2d 12 (Colo.1984). A shelter order, even though temporary in duration, nonetheless brings about a modification of a prior custody decree to some extent because physical custody of the child is thereby changed.[10] *See McGraw v. District Court,* 198 Colo. 489, 601 P.2d 1383 (1979) (a change in physical custody constitutes a modification of custody under section 14–10–131 of the Uniform Dissolution of Marriage Act). It might be argued that because of this modification section 14–13–115 of the UCCJA should preclude a Colorado court from entering even a shelter care order when another state has en-

tered a prior custody decree and has not yet declined to exercise jurisdiction under the prerequisites of the UCCJA. We believe, however, that such an interpretation of the UCCJA would impede rather than further its overriding purposes.

■■■ Section 14–13–104(1)(c) of the UCCJA essentially codifies *parens patriae* jurisdiction by authorizing a Colorado court to exercise jurisdiction in emergency situations in order to protect a child who has been subjected to or threatened with mistreatment or abuse or is otherwise dependent or neglected. *See* Commissioners' Notes, Uniform Child Custody Jurisdiction Act § 3(a)(3), 9 Uniform Laws Annotated at 124 (master ed.). To interpret section 14–13–115 of the UCCJA as a prohibition against a Colorado court's exercise of jurisdiction to enter temporary and protective custody orders in order to protect children endangered by their surroundings would in effect vitiate the very purpose of the *parens patriae* jurisdiction granted by section 14–13–104(1)(c). We therefore hold that section 14–13–115 of the UCCJA did not prevent the juvenile court from entering its order of temporary shelter care for the children, even though such order technically modified a prior custody decree of the Wyoming court that originally granted custody of the children to E.P. *See Brock,* 620 P.2d at 14–15; *Wilson v. Wilson,* 172 Colo. 566, 474 P.2d 789 (1970).

## B.

■■■ We turn to E.P.'s remaining challenge to the juvenile court's exercise of jurisdiction over the dependency proceeding pending before it. E.P. claims that the juvenile court exceeded its jurisdiction when it authorized the filing of a dependency petition and set the case for trial instead of referring the matter to Wyoming au-

10. Effective April 5, 1984, the legislature amended section 19–2–103(a) so as to permit the juvenile court to issue temporary orders for *legal* custody at a pre-adjudicatory shelter hearing. Ch. 139, sec. 2, § 19–2–103, 1984 Colo.Sess.Laws 559. This amendment was undoubtedly a response to our decision in *S.L. v. District Court in*

*and for the Tenth Judicial District,* 676 P.2d 12 (Colo.1984), which held that the Children's Code did not authorize a juvenile court to transfer *legal* custody to the department of social services at a shelter hearing, prior to any adjudication of dependency or neglect.

thorities. We conclude that the UCCJA requires the juvenile court to stay any further action on the dependency proceeding and to refer the case to the Wyoming court that entered the original custody decree so that the state of Wyoming can determine whether it will assume jurisdiction over the matter of custody.

Several reasons lead us to this conclusion. First, a dependency proceeding is expressly included within the statutory definition of a "custody proceeding" in section 14–13–103(3) of the UCCJA. Second, in the event of an adjudication of dependency, the Children's Code requires the court to hold a dispositional hearing, § 19–3–109(1), 8 C.R.S. (1978), which can result in a long-term change of custody or in the termination of the parent-child relationship itself. § 19–3–111(1), 8 C.R.S. (1978 & 1984 Supp.).[11] The substantial risk of a custody modification that the dependency proceeding poses for the parents of a dependent child renders that proceeding subject to those provisions of the UCCJA which prohibit a court of this state from modifying a custody decree of another state unless the court which rendered the custody decree no longer has jurisdiction under jurisdictional prerequisites substantially in accordance with the UCCJA or has declined to assume

jurisdiction to modify the decree. § 14–13–115(1), 6 C.R.S. (1973). Third, the facts disclosed in the record before us clearly demonstrate that the Wyoming court which rendered the initial custody decree still has jurisdiction over the issue of custody. Prior to the commencement of the dependency proceeding, the children were long-term residents of the state of Wyoming and E.P., the mother, remains a permanent resident and domiciliary of that state. The children and the custodial parent, therefore, have a significant connection with the state of Wyoming, and there is substantial evidence available in that state concerning the children's "present or future care, protection, training and personal relationships." Wyo.Stat.Ann. § 20–5–104(a)(ii) (1977). Finally, there is no evidence of record establishing that Wyoming has declined to assume jurisdiction over the children's custodial status. By allowing a Wyoming court the opportunity to assume jurisdiction over this matter, we effectuate one of the basic goals of the UCCJA, which is to assure that litigation concerning custody of children take place in the state which is in the best position to decide the issue of custody in accordance with the interests of the children. § 14–13–102(1)(b) and (c), 6 C.R.S. (1973).[12]

**11.** Section 19–3–111(1), 8 C.R.S. (1978 & 1984 Supp.), states that when the dispositional phase of the dependency proceeding does not result in the termination of the parent-child relationship, the court, if satisfied by a preponderance of evidence that a separation of the child from its parents is in the child's best interests, must include in the decree of disposition one or more of the following provisions: placement of the child in the legal custody of a relative or other suitable person, with or without protective supervision; placement of legal custody in the county department of social services or a child placement agency for placement in a family care home or other child care facility; or examination of the child by a medical practitioner or psychologist and placement of the child in a hospital or other suitable facility for special care.

**12.** Our disposition of this matter is consistent with the Interstate Compact on Juveniles, which both Colorado and Wyoming have adopted. §§ 24–60–701 to –708, 10 C.R.S. (1973); § 14–6–101, Wyo.Stat.Ann. (1977 & 1984 Supp.). This compact provides for cooperation between sig-

natory states with regard to delinquent, and dependent or neglected juveniles who become involved in legal proceedings in a court of another state. The provisions of the compact are to be liberally construed to accomplish its purposes, and states which are parties to the compact agree "to cooperate and observe their respective responsibilities for the prompt return and acceptance of juveniles ... who become subject to the provisions of [the] compact." § 24–60–702, art. I, 10 C.R.S. (1973). Article XVI provides in relevant part as follows:

When any child is brought before a court of a state of which such child is not a resident, and such state is willing to permit such child's return to the home state of such child, such home state, upon being so advised by the state in which such proceeding is pending shall immediately institute proceedings to determine the residence and jurisdictional facts as to such child in such home state, and upon finding that such child is in fact a resident of said state and subject to the jurisdiction of the court thereof, shall within five days authorize the return of such child to the home state, and

In summary, we hold that section 14–13–115(1) of the UCCJA prohibits the juvenile court from conducting further proceedings on the dependency petition until such time as it refers the pending case to the Wyoming court that entered the original custody decree and receives a response that the state of Wyoming will not assume jurisdiction over the matter of custody. Pending receipt of that response, the juvenile court may make such temporary protective orders as are necessary for the welfare of the children.

The rule to show cause in *E.P. v. District Court of Garfield County* (No. 84SA241) is made absolute, and the district court is directed to proceed in accordance with the views herein expressed. The rule to show cause in *People v. District Court in and for the Ninth Judicial District* (No. 84SA213) is discharged.

to the parent or custodial agency legally authorized to accept such custody in such home state, and at the expense of such home state, to be paid from such funds as such home state may procure, designate, or provide, prompt action being of the essence.

There is thus an express statutory policy in both Colorado and Wyoming that encourages cooperation in returning juveniles to their home state in cases such as this.