S.L., **Individually, and S.L. as mother and next friend of S.T.L., a Child, Petitioner,**

v.

The **DISTRICT COURT In and For the TENTH JUDICIAL DISTRICT, State of Colorado and Honorable Patti F. O'Rourke, one of the Judges thereof.**

No. 83SA367.

Supreme Court of Colorado, En Banc.

Jan. 16, 1984.

Rehearing Denied Feb. 27, 1984.

Russell Olin, Pueblo, for petitioner, S.L.

Ballas, Maggio & Thiebaut, P.C., William Thiebaut, Jr., Sp. Asst. County Atty., Pueblo, for respondents.

Petersen & Fonda, P.C., David W. Crockenberg, Pueblo, Guardian ad Litem for S.T.L., a Child.

Colorado Lawyers Committee, Stephane W. Atencio, Denver, amicus curiae.

QUINN, Justice.

In this original proceeding we are asked to determine whether the Colorado Children's Code[1] authorizes a juvenile court to transfer legal custody of a child from its natural parent to a county department of social services at a shelter hearing conducted under section 19–2–103. The petitioner, S.L., is the child's natural mother and claims that the respondent, the District Court of Pueblo County, exceeded its jurisdiction when it ordered that the child, who had been taken into temporary protective custody by the Pueblo County Department of Social Services (department), should be returned to the mother but that legal custody of the child should be placed with the department pending an adjudication of dependency or neglect. We issued a rule to show cause and now make the rule absolute.

I.

On August 3, 1983, the department filed with the respondent court a motion to permit it to file a petition in dependency or neglect and to grant it temporary custody of S.T.L., a three year old child. Attached to the department's motion was a report from a caseworker. The report contained an account of the caseworker's investigation of the child's family situation. It stated that on July 31, 1983, the child was taken into protective custody by the department after Pueblo police officers responded to the mother's home to answer a disturbance call which resulted in the arrest of the mother and a male companion for possession of marijuana. Several days later the child's natural father, S.L., Sr., asked the caseworker for custody of the child. An investigation of the father's background disclosed that he had a serious drinking problem. It was the caseworker's opinion that the mother needed counseling for chemical dependency and the father for alcoholism. The caseworker's report concluded as follows:

"As the environment [the mother] has provided for her child is not in the child's best interests, and inasmuch as [the father] has similar problems and, further, has no appropriate living arrangement for himself and the child, it is recommended that legal and physical custody of S.T.L., the child, be placed with the Pueblo County Department of Social Services, pending adjudication. It is further recommended that a Guardian Ad Litem be appointed for the child, that Protective Orders be [entered], and that a Petition in Dependency or Neglect be filed on behalf of the child."

The respondent court conducted a shelter hearing on August 5 and 10, 1983, and heard testimony from various witnesses. On August 11 the court made the following findings:

"1. The removal of the minor child from custody of S.L. was warranted in that there was probable cause to believe that the child's environment was injurious to his welfare and that he lacked proper parental care through the acts of his mother.

"2. ... [T]he parties appear sincere in their desire to retain custody of the minor child, S.T.L., and have presented a plan for modifying their lifestyle which appears workable.

"3. ... [The child's parents] have indicated their willingness to cooperate with the Pueblo County Department of Social Services in addressing some of the issues raised in this Shelter Hearing.

"4. ... [I]t is in the best interest of the minor child, S.T.L., that he not be removed from the physical custody of the

1. References to the Colorado Children's Code are to the present version found in 1978 Replacement Volume 8 of the 1973 Colorado Revised Statutes and the 1982 Supplement.

respondents for any longer period than is absolutely necessary."

On the basis of these findings the court ordered the department to file a petition in dependency or neglect, restored physical custody of the child to the natural parents, appointed a guardian ad litem for the child, and placed legal custody of the child with the department "for a determinate period of one year, pending adjudication herein, subject to sooner termination or extension by Order of this Court."[2] The natural mother, S.L., thereafter sought relief from this court in the nature of prohibition under C.A.R. 21.

## II.

A review of the basic structure of the Children's Code provides the legal context for determining the authority of a juvenile court to resolve the question of legal custody of a child at a shelter hearing. We note at the outset that "legal custody", as used in the Children's Code, means "the right to the care, custody, and control of a child and the duty to provide food, clothing, shelter, ordinary medical care, education, and discipline for a child and, in an emergency, to authorize surgery or other extraordinary care." Section 19-1-103(19). Legal custody may be taken from a parent only by court action. Id.[3] An agency vested with legal custody has the right, subject to the approval of the court, to determine where and with whom the child shall live during the effective period of the custody decree. Section 19-3-115(3)(a) (1982 Supp.).

The term "shelter" refers to the temporary care of a child in physically unrestricting facilities pending court disposition or execution of a placement order. Section 19-1-103(25). A shelter hearing is designed to provide emergency care and assistance for a child at the pre-adjudicatory phase of a juvenile proceeding. Recognizing the government interest in providing for the welfare of children, section 19-2-101(1)(b) authorizes a law enforcement officer to take temporary physical care of a child without order of court when the child "is abandoned, lost, or seriously endangered in his surroundings or seriously endangers others and immediate removal appears to be necessary for his protection or the protection of others."[4] The law enforcement officer is required to promptly notify the court of his action and also to inform the child's parent or legal guardian of the right "to a prompt hearing to determine whether the child is to be detained further." Section 19-2-103(2). The shelter hearing must be conducted within 48 hours, exclusive of Saturdays, Sundays, and court holidays, id., and the child may not be held in the shelter facility longer than that period "unless a petition has been filed or the court determines that it would be contrary to the welfare of the child or of the community to release the child from detention." Section 19-2-103(3)(a)(I) (1982 Supp.).[5]

After a child has been taken into temporary custody, a law enforcement officer or other person may refer the matter to the court for a preliminary investigation "to determine whether the interests of the

---

2. The juvenile court continued the case for a 90 day review pursuant to the provisions of section 19-3-115(4)(a) (1982 Supp.).

3. A decree vesting legal custody in an agency must be for a determinate period and is subject to review by the court not later than three months after the decree is entered. Section 19-3-115(4)(a) (1982 Supp.).

4. Once a child has been taken into temporary custody by a law enforcement officer, the child must be given "temporary care in a shelter facility designated by the court or the county department of social services...." Section 19-2-103(1).

5. The context of that part of section 19-2-103(3)(a)(I) quoted in the text indicates that the word "detention" is there being used in a generic and non-technical sense to refer to both "shelter custody" and custody resulting from probable cause to believe the child has committed an act of delinquency. In other instances the Children's Code uses the word "detention" in its technical sense which, as defined in section 19-1-103(1), refers to the temporary care of a child who requires secure custody in physically restricting facilities pending court disposition or execution of a placement or commitment order.

child or of the community require that further action be taken," section 19–3–101(2), such as the filing of a petition in dependency or neglect.[6] The Colorado Children's Code defines a "dependent or neglected child" to include, as pertinent here, a child who lacks proper parental care through the actions or omissions of the parent, section 19–1–103(20)(b), a child whose environment is injurious to his welfare, section 19–1–103(20)(c), and a child whose parent refuses to provide care necessary for the child's health, guidance or well-being, section 19–1–103(20)(d).

A dependency proceeding must be accompanied by various procedural safeguards calculated to protect the legal interests of the parent, child, and other interested parties. In a dependency proceeding, for example, the petition and summons must notify the parent that termination of the parent-child relationship is a possible result. Sections 19–3–102(3) and 19–3–103(1).[7] A parent financially unable to retain an attorney has a right to appointed counsel when termination of the parent-child relationship is stated as a possible remedy in the dependency summons, section 19–1–106(1)(d)

(1982 Supp.), and the right to a trial by jury, section 19–1–106(4)(a)(I). At the adjudicatory hearing the People must prove the allegations of dependency or neglect by a preponderance of the evidence, section 19–3–106(1) (1982 Supp.); *see People in the Interest of O.E.P.*, 654 P.2d 312 (Colo. 1982); *People in the Interest of A.M.D.*, 648 P.2d 625 (Colo.1982).

After a child has been adjudicated to be dependent or neglected, section 19–3–109(1) provides for a separate dispositional hearing to determine "the proper disposition best serving the interests of the child and the public."[8] The options available to the court at the dispositional hearing include not only the termination of the parental relationship but also the following less drastic remedies:

"(a) The court may place the child in the legal custody of one or both parents or the guardian, with or without protective supervision, under such conditions as the court may impose, as provided in section 19–3–110.

"(b) The court may place the child in the legal custody of a relative or other

---

6. As an alternative to authorizing the filing of a petition, the juvenile court may decide that no further action is required or make whatever informal adjustment is practicable without a petition. Section 19–3–101(2).

7. Section 19–3–102 addresses the form and content of all petitions and subsequent documents filed in proceedings commenced under the Children's Code. Subsection 19–3–102(3) specifically requires the following statement on all petitions alleging dependency or neglect of a child:

"Termination of the parent-child legal relationship is a possible remedy available if this petition alleging that a child is dependent or neglected is sustained. A separate hearing must be held before such termination is ordered. Termination of the parent-child legal relationship means that the child who is the subject of this petition would be eligible for adoption."

Section 19–3–103(1) requires the court, after a petition has been filed, to promptly issue a summons "reciting briefly the substance of the petition." This subsection also states:

"The summons shall also contain a statement, *when appropriate*, that the termination of the parent-child legal relationship is a possible remedy under the proceedings and shall set

forth the constitutional and legal rights of the child, his parents or guardian, or any other respondent, including the right to have an attorney present at the hearing on the petition." (Emphasis added.)

Because section 19–3–103 establishes procedures for the issuance of summonses in all types of juvenile proceedings, the "when appropriate" language of subsection (1) is an obvious reference to all petitions in dependency or neglect, which, pursuant to subsection 19–3–102(3), must include a notification of the possibility of termination of the parent-child legal relationship.

8. Section 19–3–106(3) states that after an adjudication of dependency or neglect is entered, the court may continue the hearing from time to time, allowing the child to remain in the home or in the temporary custody of another person or agency subject to conditions imposed by the court, as long as the child and his parent, guardian, or other legal custodian consent to the continuance. The continuance must be reviewed at the expiration of six months when, if the matter is again continued for an additional six month period, the petition must either be dismissed or sustained at the end of this second six month period.

suitable person, with or without protective supervision, under such conditions as the court may impose, as provided in section 19–3–110.

"(c) The court may place legal custody in the county department of social services or a child placement agency for placement in a family care home, or other child care facility.

"(d) The court may order that the child be examined or treated by a physician, surgeon, psychiatrist, or psychologist or that he receive other special care and may place the child in a hospital or other suitable facility for such purposes." Section 19–3–111(1).

Within this array of dispositional options, however, the court may not divest the parents of legal custody unless "it shall be made to appear by a preponderance of the evidence that a separation of the child from the parents or guardian is in the best interests of the children." Section 19–3–111(1.1) (1982 Supp.). ·

### III.

When the jurisdictional issue in this case is viewed within the framework of the Children's Code, we are satisfied that the district court exceeded its jurisdiction when, prior to any adjudication of dependency or neglect, it transferred legal custody of S.T.L. to the department at a shelter hearing.

We first note that there is no specific statutory authority for a juvenile court to divest a natural parent of legal custody prior to an adjudicatory hearing. At a shelter hearing conducted under section 19–2–103, only two options are available to the court: (1) to determine whether the welfare of the child or the community requires continued shelter pending further action by the court; or (2) to order the release of the child to his parent or guardian. In marked contrast to these shelter hearing options, section 19–3–111(1) expressly authorizes the court upon an adjudication of dependency or neglect to divest the parents of legal custody and place cus-

tody in some other person, department, or agency.

The lack of judicial authority to transfer legal custody at a pre-adjudicatory shelter hearing is further evidenced by sections 19–1–104(3) and 19–10–107 (1982 Supp.) of the Children's Code. Section 19–1–104(3), in general terms, authorizes the juvenile court to issue "temporary orders providing for protection, support, or medical or surgical treatment as it deems in the best interest of any child concerning whom a petition has been filed prior to adjudication or disposition of his case." Significantly absent from this pre-adjudicatory jurisdictional grant is any reference to legal custody. Section 19–10–107, which authorizes the issuance of an order for temporary protective custody in the case of a child "reasonably believed to have been abused or neglected," speaks only of physical custody rather than legal custody. This section requires the juvenile court in each judicial district to make available at all times a designated person, who may be the juvenile judge, to issue "written or verbal temporary protective custody orders," when requested by the county department of social services, a local law enforcement officer, an administrator of a hospital, or a physician and when it is reasonably believed that the circumstances or conditions of the child's present place of residence or custodial situation would present a danger to life or health in the reasonably foreseeable future. The statute, however, restricts such "temporary protective custody orders" to a period not in excess of seventy-two hours, notwithstanding any provision of section 19–2–103(3)(a) [the shelter statute] to the contrary." The plain terms of section 19–10–107 indicate that, in the absence of a final adjudication, a change in physical custody only is what is contemplated by a "temporary protective custody order."

The character of the statutory shelter hearing also supports our conclusion. A shelter hearing arises from exigencies requiring temporary emergency measures designed to protect the welfare of the child pending further judicial proceedings. Al-

though a shelter hearing does affect the natural parents' interest in the *physical* custody of the child, *see P.F.M. v. District Court*, 184 Colo. 393, 520 P.2d 742 (1974), the hearing is neither designed nor intended to resolve the rights of natural parents to the *legal* custody of their child. Given the narrow scope of the shelter hearing and the temporary effect of a shelter order, the procedures employed will necessarily be less formal and more summary in nature than those applicable to an adjudicatory hearing. Because the adjudicatory hearing, in contrast, permits the court to enter a dispositional decree that may critically affect the interests of the parents in the legal custody of their child, the Children's Code requires that the adjudicatory hearing be conducted in accordance with explicit procedural safeguards calculated to protect the interests of the natural parents.

When the nature and purpose of the shelter hearing are considered in light of the overall structure of the Children's Code, there simply is no basis to support a court's authority to divest the natural parent of legal custody at this pre-adjudicatory stage of the case. A shelter hearing order that divests the natural parent of legal custody is tantamount to a dispositional decree without an underlying adjudication of dependency or neglect, and, as such, is far in excess of any emergency measure designed to secure the child's welfare pending further judicial proceedings.[9]

## IV.

The respondent court and the guardian ad litem have urged us to adopt a contrary interpretation of the Children's Code and have raised separate arguments in this regard. We address these arguments but find them unpersuasive.

## A.

The respondent court contends that the transfer of legal custody at a shelter hearing is specifically authorized by subsections (4)(a) and (4)(d) of section 19–3–115 (1982 Supp.) which state:

"(4)(a) A decree vesting legal custody of a child in an individual, institution, or agency or providing for placement of a child pursuant to sections 19–2–103, 19–3–101.1, or 19–3–109 shall be for a determinate period. Such decree shall be reviewed by the court no later than three months after it is entered, except a decree vesting legal custody of a child with the department of institutions.

\*    \*    \*    \*    \*    \*

"(d) A decree vesting legal custody of a child or providing for placement of a child pursuant to sections 19–2–103, 19–3–101.1, or 19–3–109 with an agency in which public moneys are expended shall be accompanied by an order of the court which obligates the parent of the child to pay a fee, based on the parent's ability to pay, to cover the costs of the guardian ad litem and of providing for residential care of the child. When custody of the child is given to the county department of social services, such fee for residential care shall be in accordance with the fee requirements as provided by rule of the department of social services and such

---

9. Our conclusion that the shelter hearing statute (section 19–2–103) was not intended to confer authority on the juvenile court to transfer legal custody finds additional support in subsection (5) of the statute, which states:

"(a) After making a reasonable effort to obtain the consent of the parent, guardian, or other legal custodian, the court may authorize or consent to medical, surgical, or dental treatment or care for a child placed in detention or shelter care.

"(b) When the court finds that emergency medical, surgical, or dental treatment is required for a child placed in detention or shel-

ter care, it may authorize such treatment or care if the parents, guardian, or legal custodian are not immediately available." Section 19–2–103(5)(a) and (b).

If the legislature intended to confer authority on the juvenile court to transfer legal custody at a shelter hearing, then subsection (5) would appear to be superfluous because, given the definition of legal custody in section 19–1–103(19)(a), the legal custodian already would possess the authority to provide "ordinary medical care" and, "in an emergency, to authorize surgery or other extraordinary care."

fee shall apply, to the extent unpaid, to the entire period of placement."

We do not view these provisions as a grant of authority to the juvenile court to change legal custody, as distinct from physical custody, at a shelter hearing. Subsections (4)(a) and (4)(d) merely recognize that the juvenile court, at different stages of a proceeding under the Children's Code, may enter two types of orders with regard to a child's custodial or living situation: a decree "vesting legal custody of a child" and a decree or order "providing for placement of a child." Section 19–3–109(1), for example, authorizes a juvenile court, following an adjudication of dependency or neglect, to conduct a dispositional hearing which, under section 19–3–111(1), could result in a decree vesting legal custody of a child in someone other than the natural parent.[10] In the absence of an adjudication, however, a juvenile court may still affect a child's living situation by entering a pre-adjudicatory order of placement at a shelter hearing conducted under section 19–2–103, or an order for extended placement out of the home pursuant to a hearing under 19–3–101.1 (1982 Supp.).

Subsection (4)(a) of 19–3–115 places temporal limitations on custody decrees or placement orders once the juvenile court has properly exercised its statutory jurisdiction. Subsection 4(d) does no more than require the court, as part of an authorized custody decree or placement order, to order the child's parents to pay some fee, commensurate with their financial ability, to cover the costs of a guardian ad litem and residential care for the child. We cannot reasonably read into these subsections statutory authority for a juvenile court to transfer legal custody of the child at a shelter hearing, prior to an adjudication of dependency or neglect.

### B.

The guardian ad litem argues that our decision in *Lovato v. District Court*, 198 Colo. 419, 601 P.2d 1072 (1979), provides the necessary authority for a juvenile court to transfer legal custody at a shelter hearing. The guardian ad litem's argument, in our view, engrafts on *Lovato* an interpretation far broader than is supportable by the holding in that case.

*Lovato* involved a seventeen month old child who had been grossly abused and had been kept alive by means of a mechanical respirator. At a shelter hearing the juvenile court, noting that the natural parents were neither able nor available to act as parents, placed temporary custody of the child with the Pueblo County Department of Social Services, which was directed to file a petition in dependency or neglect. The court also appointed guardians ad litem for the child and appointed a neurologist to examine the child. At a hearing conducted shortly thereafter various physicians testified that the child had suffered total and irreversible cessation of brain function and that the child's vital functions, which were being maintained by the mechanical respirator, would deteriorate rapidly and ultimately cease, with cardiac arrest occurring within a month. After finding that the child had sustained irreversible cerebral death and that nothing could reestablish spontaneous brain function or respiration, the juvenile court formulated as the legal standard of death "that state which occurs when it is determined by a physician, based on reasonable medical standards, that there is no spontaneous brain function and either spontaneous respiratory function or spontaneous circulatory function cannot be restored by resuscitation or supportive maintenance." *Lovato v. District Court, supra* at 423, 601 P.2d at 1074. The juvenile court then ordered the guardians ad litem to execute a document authorizing the treating physician and hospital to remove all extraordinary life support devices if, in the doctor's opinion, the

---

**10.** A further explanation of the reference in section 19–3–115(4)(a) and (4)(d) to section 19–3–109 is found in subsection (2) of section 19–3–109. That subsection authorizes the court to place the child in a hospital or other suitable facility for a medical, psychiatric or psychological examination pending the dispositional hearing.

legal standard for cerebral death had been met.

It was on this state of the record that the child's natural mother challenged in an original proceeding the juvenile court's jurisdiction to order the discontinuance of the life support systems and its authority to formulate a legal definition of death based upon cessation of brain functions. After issuing a rule to show cause, this court held, as a threshold matter, that the juvenile court did have jurisdiction to permit the removal of the life support systems and then, addressing the principal issue, determined that the court properly considered irretrievable cessation of all brain functions as proof of legal death.

Our resolution in *Lovato* of the preliminary jurisdictional issue finds support in sections 19–1–104(3) and 19–2–103(5)(b), both of which were then and are presently in effect. Section 19–1–104(3) expressly confers jurisdiction on the juvenile court to issue orders providing for medical treatment "as it deems in the best interest of any child concerning whom a petition has been filed prior to adjudication or disposition...." In addition, section 19–2–103(5)(b) permits the court to authorize emergency medical care for a child placed in shelter care "if the parents, guardian, or legal custodian are not immediately available." Contrary to the guardian ad litem's contention, we do not read *Lovato* as tacit authority for a juvenile court to transfer legal custody from the natural parent to a third party as part of a shelter hearing order.

### V.

We acknowledge that the state has a strong interest in the welfare of children. For this reason, a juvenile court should have considerable latitude in providing for the welfare of a child in need of temporary emergency care. We believe, however, that the remedies available to the juvenile court at a shelter hearing are adequate to address the legitimate concerns of the state. These remedies permit the court to safeguard the welfare of the child by providing for protective physical custody pending the adjudicatory and dispositional phases of the case.

Legal custody vests a custodian with basic rights with respect to the care, custody, and control of the child. Section 19–1–103(19)(a). An order transferring legal custody from a natural parent to a third party affects the legal interests of the natural parent and substantially interferes with the integrity of the family relationship itself. We will not infer from statutory silence a jurisdictional grant to a juvenile court to sever legal custody from a natural parent at a pre-adjudicatory shelter hearing. We therefore hold that the respondent court exceeded its jurisdiction when, at the shelter hearing, it transferred legal custody of S.T.L. from its natural parents to the department.

The rule to show cause is made absolute and the respondent court is directed to vacate that part of its shelter order transferring legal custody of the child to the department.